UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

**SEP 2 5 2009**

In re:

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

PAUL M. HANNA, JR.,                    Case No. 6:08-bk-01738-ABB

Debtor.                                Chapter 7

_____/

ENLIGHTEN TECHNOLOGIES, INC.,

    Plaintiff,                        Adv. Pro. No. 6:08-ap-00229-ABB

v.

PAUL M. HANNA, JR.,

    Defendant.

_____/

## MEMORANDUM OPINION

    This matter came before the Court on the Amended Complaint (Doc. No. 12) ("Complaint") filed by the Plaintiff Enlighten Technologies, Inc. ("Plaintiff") against Paul M. Hanna, Jr., the Debtor and Defendant herein ("Debtor"). Plaintiff requests a debt of $42,004,799.87, with accruing interest, be deemed nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and the Debtor's discharge be denied pursuant to 11 U.S.C. Section 727(a).

    The final evidentiary hearing was held on June 25, 2009 at which the Debtor, his counsel, Plaintiff's Treasurer, and counsel for Plaintiff appeared. The Court granted the parties leave to file post-hearing briefs and held the record open to allow Plaintiff to submit additional evidence regarding the Debtor's inheritance funds. The parties filed post-hearing briefs (Doc. Nos. 27, 29) and Plaintiff filed a Notice of Submittal of

Additional Evidence and Request for Judicial Notice (Doc. No. 28) ("Notice") with two letters attached. Plaintiff requests the letters be admitted into evidence and the Court take judicial notice of certain facts.

The Notice is unopposed and the relief requested in the Notice is due to be granted. Judgment is due to be entered in favor of the Debtor and against Plaintiff on each count of the Complaint for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Background*

The Plaintiff is an Iowa corporation located in Cedar Rapids, Iowa engaged in the telecommunications business. It was formed in the 1990s to serve the legal community in various aspects of listings of State and Federal cases and forms.[1] Richard A. Pundt ("Pundt") is Plaintiff's President and Chief Executive Officer. John Weepie ("Weepie") is its Treasurer.

Plaintiff, in 2002, wanted to expand its business into "conversions technology" described as the ability to combine data, voice, fax, and video conferencing in one telecommunications line.[2] It needed substantial financing for the expansion. Plaintiff,

---

[1] June 25, 2009 Hr'g Tr., p. 17.
[2] Id.

through Pundt, was negotiating funding with Marvin Gellar and Haskins Capital Group.[3] Plaintiff and the Debtor were introduced in May 2002 through Marvin Gellar.[4]

The Debtor verbally represented to Plaintiff he was experienced in raising venture capital and could raise substantial funding for Plaintiff's expansion project through the buying and selling of bank instruments.  The Debtor presented a letter to Pundt on May 28, 2002 on Ecolotech Group, LLC ("Ecolotech") letterhead describing Ecolotech's environmental clean-up business and his experience.[5]  He included a one-page document titled with his name and "Site Planning, Engineering, Environmental Permitting Presentation, Total Construction and Funding" with the word "Accomplishments" beneath.  The Debtor listed as "Accomplishments":

    (i)     "Securities License";

    (ii)    Experience with several construction and environmental projects;

    (iii)   "President of Ecolotech Group, LLC.  Provide Multi Billion Dollar Funding for Ecolotech manufacturing and construction around the World as well as other Environmental and Humanitarian Projects Worldwide."[6]

The Debtor attached to the letter documentation regarding Ecolotech's formation, his appointment as the company's Registered Agent, and a copy of his passport.

Ecolotech is a Florida limited liability company formed in 2001.[7]  The Debtor was involved in Ecolotech's formation, has a thirty percent membership interest in the company, and is its President.[8]  Ecolotech's business, as described by the Debtor, is "to

---

[3] Debtor's Ex. No. 19.
[4] Id.
[5] Plaintiff's Ex. No. 1.
[6] Id.
[7] Id.
[8] June 25, 2009 Hr'g Tr., p. 89, ll.9-19.

earn and provide project funding for itself and others through the purchase and sale of securities."[9]  It was formed to assist Ecolotech International raise venture capital for the construction of units designed to eliminate hazardous and toxic waste.[10]

The Debtor sent a second letter to Pundt on May 28, 2002 on Ecolotech letterhead regarding "Buy Sell Program" stating he was interested in seeing Plaintiff's business plan and:

> [We] raise funding through the purchase and resell of Bank Guarantees, debentures and Medium Term Notes.  Because of the nature of our business (Environmental and humanitarian) we are able to raise large sums for our needs and others.
>
> We are about to begin another Buy Sell Program this week (Thursday).  I have attached a copy of my Documentary Credit that allows me to raise [worthwhile] funds to purchase a Bank Guarantee in the $500,000,000.00 range.  Of course I purchase these at a huge discount and sell them to an Exit Buyer for a large spread.  You may call Alan Lullove if you have questions about my procedures.  (702) 362-6290.
>
> We discussed that your company would place $250,000.00 US Dollars with us in return for double your money back in 7 to 10 days to place in Don Galna's program.  We will receive our money back from Don in 30 days.  Both of us use the monies interest free.  Call me if you need more information . . .
>
> The following is our wiring instructions:
>
>> Ecolotech Group, LLC (Paul M. Hanna Jr., President)
>> United Southern Bank
>> Post Office Drawer 29
>> Umatilla, Florida 32784
>> Routing # 063105285
>> Account # 0207918

Enclosed with the May 28, 2002 letter was a one-page letter dated March 19, 2002 from Allied Boston Group to the Debtor stating Ecolotech had been approved for "Issuance of

---

[9] Doc. No. 38, Sept. 25, 2008 Letter.
[10] June 25, 2009 Hr'g Tr., p. 117.

$500 FIVE HUNDRED MILLION U.S. DOLLARS Straight Documentary Credit posted on BLOOMBERG."[11]

The Debtor sent a letter to Pundt on May 30, 2002 regarding "Buy/Sell Program" addressing Plaintiff's request for a $30,000,000.00 loan:

> Dick, as you and I discussed, Ecolotech will provide you with the monies you need all at once as well as additional funds that will pay your debt service and all fees. It will take three or four weeks for our program starting now, to be ready for corporate loans to others . . . It is important that you get in your $250,000.00 now for us, for we have two others requesting funds that will provide the last $250,000.00 that we need for our fee to post our documentary credit on Bloomberg if you do not.[12]

The Debtor sent a fax to Pundt on June 3, 2002 instructing Plaintiff to wire $250,000.00 to Allied Boston International, Inc.'s account, Account No. 00-82005398, and stating:

> As we discussed please see attached the banking coordinates for Allied Boston International, Inc. I appreciate your agreeing to wire the funds direct to them. We all know that the funds are for our fee to provide our posting on Bloomberg.[13]

Weepie caused $250,000.00 from Plaintiff's bank account to be wired to the Allied Boston account.[14]

The Debtor requested Plaintiff make a second wire transfer of $175,000.00 and Plaintiff agreed. Weepie caused $175,000.00 from Plaintiff's bank account to be wired to the Allied Boston account on July 15, 2009.[15]

The Debtor issued a note dated May 30, 2002 on Ecolotech letterhead and signed by him as President setting forth "the undersigned hereby jointly and severally promises to pay to the order of Enlighten Technologies the sum of $500,000.00 US Dollars which

---

[11] Id.
[12] Plaintiff's Ex. No. 3.
[13] Plaintiff's Ex. No. 6.
[14] Plaintiff's Ex. No. 5.
[15] Plaintiff's Ex. Nos. 6, 9.

5

includes the agreed return on the $250,000.00 loan to Ecolotech Group, LLC for payment of fees to Allied Boston Group for a Buy/Sell Program.  Amount will be paid in full within 10 Banking Days or less . . . ."[16]

Pundt, as President and CEO of Plaintiff, and the Debtor, individually and as President of Ecolotech, executed a one-page document on July 12, 2002 summarizing the parties' intentions and agreements.[17]  It sets forth the $30,000,000.00 was "expected to be completely in place and available to [Plaintiff] on or before August 15th, 2002."[18]  Pundt, as CEO of Plaintiff, and the Debtor, as President of Ecolotech, executed a Joint Venture Agreement on July 24, 2002 purporting to create a joint venture between Plaintiff and Ecolotech whereby they "agree to engage in a Deutsche Bank Guarantee Buy/Sell Contract . . . ."[19]  The Joint Venture Agreement formalizes and expands upon the agreements contained in the July 12, 2002.

Pundt was the Debtor's primary contact with Plaintiff.  He is an attorney.  He negotiated the parties' agreements and authorized the wire transfers.  He drafted the July 12, 2002 and July 24, 2002 agreements.

The Debtor sent Plaintiff a series of letters detailing his or Ecolotech's purported attempts to obtain bank instruments and raise financing funds.[20]  He represented trades of bank instruments had taken place and Plaintiff would "receive over 70 times your

---

[16] Plaintiff's Ex. No. 4.
[17] Plaintiff's Ex. No. 7.
[18] Id.
[19] Plaintiff's Ex. No. 10.
[20] Plaintiff's Ex. Nos. 12, 13, 14.

investments of $425,000 USD."[21]  The $30,000,000.00 funding never materialized and the Plaintiff's $450,000.00 was never repaid or returned.

### State Court Litigation

A civil action was initiated against Plaintiff in the Iowa District Court in and for Linn County ("Iowa State Court") captioned *Ken Gooley v. Enlighten Technologies, Inc.*, Law No. LACV 046274 ("Iowa Litigation").[22]  Plaintiff apparently had made commitments to third parties regarding its intended business expansion and breached those commitments.[23]  Plaintiff provided minimal information regarding the Iowa Litigation.

Plaintiff filed a Cross Claim against Marvin Gellar, Haskins Capital Group, the Debtor, Ecolotech, and others in the Iowa Litigation on July 3, 2003.[24]  Pundt represented Plaintiff in the Iowa Litigation and signed the Cross Claim as counsel.[25]  The Debtor and Ecolotech did not answer or appear.  Plaintiff sought a default judgment against the Debtor and Ecolotech.  The Clerk entered a default against the Debtor and Ecolotech on December 22, 2003.[26]

Plaintiff filed a Request for Entry of Judgment against the Debtor and Ecolotech based upon a supporting Affidavit prepared by Pundt.[27]  Plaintiff did not present the Request for Entry of Judgment, Affidavit, or any evidence relating to service made upon the Debtor.  The Iowa State Court entered an Order for Judgment Entry on June 21, 2005

---

[21] Plaintiff's Ex. No. 13.
[22] Debtor's Ex. No. 19.
[23] Id.; June 25, 2009 Hr'g Tr., pp. 48-50.
[24] Debtor's Ex. No. 19.
[25] Id.
[26] Plaintiff's Ex. No. 15 (Order for Judgment Entry).
[27] Id.

("Judgment")[28] awarding judgment of $30,875,000.00 in favor of the Plaintiff and against

the Debtor and Ecolotech, jointly and severally, with interest:

1. Interest at the rate of ten percent (10%) per month commencing on July 17, 2002 on $250,000.00 of the judgment.

2. Interest at the rate of five percent (5%) per annum commencing on July 17, 2002 on $250,000.00 of the judgment.

3. Interest at the rate of five percent (5%) per annum commencing on July 25, 2002 on $350,000.00 of the judgment.

4. Interest at the rate of five percent (5%) per annum commencing on July 25, 2002 on $5,000,000 of the judgment.

5. Interest at the rate of five percent (5%) per annum commencing of August 16, 2002 on $25,000,000 of the judgment.

Plaintiff initiated proceedings in Florida in Osceola, Lake, and Seminole Counties

to domesticate the Judgment. The Debtor challenged the domestication of the Judgment

on the basis it was invalid because the Iowa State Court did not have jurisdiction over

him when it entered the Judgment.[29] The Debtor has been a Florida resident since 1969

and has never been a resident of Iowa. He contends he was not served with process in the

Iowa State Litigation.

Pundt, by regular mail, sent a letter to the Debtor on July 14, 2003 with a copy of

the Cross Claim, an Original Notice, and an Acceptance of Service form attached.[30] He

requested the Debtor accept service on behalf of himself and Ecolotech. The Debtor did

not accept service on behalf of himself or Ecolotech.[31]

---

[28] Plaintiff's Ex. No. 15.
[29] Plaintiff's Ex. No. 32.
[30] Debtor's Ex. No. 19.
[31] June 25, 2009 Hr'g Tr., pp. 147-151.

The Debtor, to pursue his domestication objection, was required to post bonds in the three Florida counties.[32] The Lake County Court directed him to post a bond of $1,000,000.00 and the Seminole County Court required him to post a bond of $40,000,000.00.[33] He did not have the resources to post such substantial bonds.[34]

### *Bankruptcy Case*

The Debtor filed the above-captioned Chapter 7 bankruptcy case on September 4, 2008 ("Petition Date") and the domestication proceedings were stayed by the automatic stay of 11 U.S.C. Section 362(a). The Debtor filed his bankruptcy case *pro se* and was not assisted by counsel in the preparation of his Schedules or Statement of Financial Affairs.[35] The Court takes judicial notice of the docket contents of the Debtor's main case, this adversary proceeding, and the claims register.

The Debtor set forth in Schedule A he owned no real property and listed as assets in Schedule B:

(i)     household furnishings valued at $15,000.00;

(ii)    basic clothing valued at $200.00;

(iii)   a 1996 Chevrolet S-10 pickup truck valued at $1,500.00;

(iv)    a laptop computer, copier, fax, desks, and bookshelves valued at $4,000.00.[36]

He stated "None" for the remaining thirty-one asset categories in Schedule B including:

(i)     cash on hand;

(ii)    checking, savings or other financial accounts;

---

[32] Plaintiff's Ex. Nos. 33, 34, 35.
[33] Plaintiff's Ex. Nos. 33, 34.
[34] June 25, 2009 Hr'g Tr., pp. 113-114.
[35] Main Case Doc. No. 1 (Petition); June 25, 2009 Hr'g Tr., p. 93, ll.22-25.
[36] Main Case Doc. No. 1 (Schedules).

(iii)    stock and interests in incorporated and unincorporated businesses;

(iv)    interests in partnerships or joint ventures;

(v)     government and corporate bonds and other negotiable and nonnegotiable instruments;

(vi)    accounts receivable;

(vii)   other liquidated debts owed to the Debtor;

(viii)  equitable or future interests;

(ix)    contingent and noncontingent interests in the estate of a decedent, death benefit plan, life insurance policy, or trust; and

(x)     other contingent and unliquidated claims of every nature.[37]

He listed no creditors in Schedules D and E and listed five general unsecured creditors in Schedule F with debts totaling $41,064,387.00, including a debt of $41,000,000.00 owed to the Plaintiff.[38]  He designated the Plaintiff's debt as disputed and listed Ecolotech as a codebtor of the debt in Schedule H.  He filed an Amended Schedule F to correct a mathematical error.[39]  He made no further amendments to his Schedules or Statement of Financial Affairs.

The Debtor described his occupation as "humanitarian funding" in Schedule I and Ecolotech as his employer.  His monthly income is $0.00 and he noted: "Ecolotech Group LLC may close on Humanitarian Funding for Asian Projects.  Commissions will pay for back unpaid salaries."  The Debtor filed no payment advices, but filed a letter stating:  "I

---

[37] Id.
[38] Id.
[39] Main Case Doc. No. 13.

10

have no proof of income for the past 60 day[s].  Company has not paid for 6 years."[40]
His monthly expenses are $3,980.00 as set forth in Schedule J.

He answered "None" to most of the disclosure questions in the State of Financial
Affairs.  He answered "None" for the income disclosures in Questions 1 and 2 which
require disclosure of all income received by the Debtor in 2008, 2007, and 2006 and the
income sources.  He disclosed having an interest in Ecolotech in Question 18.  The
addresses listed for Ecolotech are the Debtor's current and past residences.

Marie E. Henkel is the Chapter 7 Trustee ("Trustee").  She sent a letter to the
Debtor on September 17, 2008 requesting additional information be provided to her prior
to the Debtor's 11 U.S.C. Section 341 initial meeting of creditors set for October 14,
2009.[41]  Her letter contains fourteen information requests including requests for copies of
the Debtor's tax returns, insurance documentation, the Judgment, stock certificates, bank
statements, and "information regarding any probate or trust estate to which the debtor has
been a party in the two years prior to filing."[42]  The September 17, 2008 letter is admitted
into evidence as Plaintiff's Exhibit No. 36.

The Debtor sent a letter to the Trustee on September 25, 2009 addressing each of
her information requests.  He attached various documents to the letter including tax
returns, the Judgment, the truck title, an Ecolotech bank statement, a business equipment
list, an accounting of inheritance funds received.[43]  He explained regarding Ecolotech and
the inheritance:

---

[40] Main Case Doc. No. 4.
[41] Doc. No. 28.
[42] Id.
[43] Id.

> From the beginning in 2001 until September of 2008 no contracts were completed and no income or profits were made to any managing members of Ecolotech Group, LLC. I, Paul M. Hanna, Jr. worked full time during the entire time period.  An explanation of each year[']s activities is attached.
>
> . . .
>
> Please see the attached [in]heritenace funds received for 2006 through September 2008.  My wife and I would not have survived without these funds.[44]

Plaintiff presented the Debtor's letter as additional evidence, but did not include all of the Debtor's attachments; it only included the Debtor's accounting of inheritance received. The letter is incomplete without its attachments.  The letter is admitted into evidence as Plaintiff's Exhibit No. 37.

The Trustee conducted the 11 U.S.C. Section 341 initial meeting of creditors on October 16, 2008 and recommenced the meeting on October 27, 2008 for further examination of the Debtor.  The Trustee concluded the meeting of creditors on October 27, 2008.  The Debtor appeared at the meetings *pro se.*

The Trustee designated this case an asset case.[45]  She has not challenged the Debtor's discharge or initiated any adversary proceedings against him.  The Plaintiff is the only party that filed an adversary proceeding against the Debtor.  The deadlines for filing adversary proceedings pursuant to Sections 707, 727, and 523 of the Bankruptcy Code have passed.

The Trustee has not filed any motions to compel the turnover of information from the Debtor.  It appears the Debtor has cooperated with the Trustee based upon the docket entries and the Debtor's prompt written response to the Trustee's information request. The Trustee was not called as a witness in this matter.

---

[44] Doc. No. 28, Sept. 25, 2008 Letter.
[45] Main Case Doc. Nov. 20, 2008 entry.

Plaintiff filed a proof of claim, Claim No. 2-1, asserting a general unsecured claim of $42,004,799.87, consisting of principal of $30,875,000.00 and interest of $11,129,799.87 based upon the Judgment. The claim was signed by Pundt as President of the Plaintiff.

Plaintiff filed a four-count Complaint alleging the Judgment is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and the Debtor should be denied a discharge pursuant to 11 U.S.C. Sections 727(a)(3), 727(a)(4)(A), and 727(a)(5). No other parties, including the Trustee, have objected to the Debtor's discharge or to the dischargeability of certain debts.

Jerry R. Hamling ("Hamling") represents the Debtor in this adversary proceeding and appeared as his counsel at the Debtor's Federal Rule of Bankruptcy Procedure 2004 examination. He, individually and not as counsel for the Debtor, filed in the main case a motion for reconsideration of the Order authorizing the Plaintiff to depose him.[46] Hamling has not entered an appearance as Debtor's counsel in the main bankruptcy case and the Debtor remains *pro se* in the main case.

### *Discharge Analysis*

### *Count III*

Plaintiff did not pursue its 11 U.S.C. Section 727(a)(3) cause of action contained in Count III of the Complaint.[47] Judgment is due to be entered in favor of the Debtor and against the Plaintiff on Count III.

---

[46] Main Case Doc. No. 33.
[47] June 25, 2009 Hr'g Tr., p. 5, ll.2-10.

13

### *Count II*

Plaintiff asserts in Count II the Debtor knowingly and fraudulently made material misrepresentations and omissions in his Schedules and Statement of Financial Affairs relating to:

(i)      inheritance funds received from Elizabeth Waugh, Paul Hanna, and Sylvia Hanna;

(ii)      his membership interest in Ecolotech;

(iii)      his status as manager and officer of Wells Ventures, LLC;

(iv)      his status as director of Anser AG Anlage-Service;

(v)      his status as vice-president and director of Stargate Advisory Group;

(vi)      his interest and status in a partnership that provided engineering services for projects in China known as the "China Growth Fund";

(vii)      funds set aside for his benefit in Europe; and

(viii)      all known creditors.

Plaintiff asserts the Debtor is not entitled to a discharge pursuant to 11 U.S.C. Section 727(a)(4)(A) due to his alleged material misrepresentations and omissions.

### *Inheritance Disclosure*

The Debtor's aunt Elizabeth Waugh, his father Paul M. Hanna, and his mother Sylvia Hanna passed away prepetition. He disclosed to the Trustee in his September 25, 2008 letter he received inheritance distributions totaling $127,301.95 in 2006, 2007, and 2008 from probate proceedings in Shelby County, Kentucky and Fayette, County, Kentucky. He delineated the "settlement after taxes" distributions were:

14

    (i)     8/30/06 received $18,700.00 from his aunt's probate estate.

    (ii)    3/2/07 received $105,995.25 from his parents' probate estates.

    (iii)   8/7/08 received $334.08 "final settlement" from his aunt's estate.

    (iv)   8/8/08 received $2,272.62 "final settlement" from his mother's estate.[48]

The Debtor informed the Trustee: "These funds went into the account of Beverly R. Hanna, my wife, for living expenses and loans to Ecolotech Group, LLC."[49] The Debtor provided no information regarding the status of his father's probate estate and whether any further distributions were expected or received.

The Bankruptcy Code includes as property of the estate any bequest, devise, or inheritance a debtor acquires or becomes entitled to acquire within 180 days after the petition date. The August 30, 2006, March 2, 2007, August 7, 2008, and August 8, 2008 inheritance distributions were all received by the Debtor prepetition. They do not constitute property of the estate and he was not required to disclose the distributions in Schedule B. Any inheritance distributions the Debtor received, or became entitled to receive, within 180 days after the Petition Date constitute property of the estate and is subject to turnover to the Trustee.

The Debtor was required to disclose his interests in the probate estates in Question 20 of his Schedules "Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust." He was required to disclose each of the inheritance distributions in his Statement of Financial Affairs in Question 2 as income. The Debtor did not disclose the inheritance distributions or his interest in the

---

[48] Doc. No. 28, attachment to Sept. 25, 2008 Letter.
[49] Id.

probate proceedings in any papers filed with the Bankruptcy Court. He has not amended his Schedules and Statement of Financial Affairs to address these items.

The Debtor testified he believed he had disclosed the inheritance distributions in his bankruptcy papers.[50] He believed his September 25, 2008 response to the Trustee constituted disclosure of these items. It appears the Debtor confused the Trustee with the Court and believed a disclosure made to the Trustee constituted a disclosure to the Court.

The Debtor's explanations were credible. He did not attempt to conceal the inheritance distributions or the probate proceedings and promptly disclosed those items to the Trustee prior to his meeting of creditors. His failure to disclose these items in his Schedules and Statement of Financial Affairs was the result of unintentional oversight and unfamiliarity with the bankruptcy process. His omissions were not fraudulent.

### Ecolotech Disclosure

The Debtor was required to disclose in Question 13 of Schedule B "stock and interests in incorporated and unincorporated businesses." He listed "None" despite having a thirty percent ownership interest in Ecolotch on the Petition Date.[51] He explained his failure to list Ecolotech in Schedule B was his "mistake." "I did not have proper counsel helping me do this. So I did this at the best of my ability. I felt that I had done this correctly."[52]

The Debtor did, however, disclose the existence of Ecolotech and his interest in the company in his Statement of Financial Affairs and other portions of the Schedules. He listed Ecolotech in Schedule H as a co-debtor of the Judgment debt and in Schedule I

---

[50] June 25, 2009 Hr'g Tr., pp. 107, 110.
[51] Id. at p. 91, ll.13-25.
[52] Id. at p. 92, ll.5-7.

16

as his employer. He disclosed in Question No. 18 of his Statement of Financial Affairs Ecolotech as a business in which he had an interest.

The Debtor disclosed his interest in Ecolotech to the Trustee in the early stages of his case, prior to his meeting of creditors. He disclosed his interest in Ecolotech on the record at his Section 341 meeting of creditors. Plaintiff's counsel appeared at both the initial and recommenced meeting of creditors. The Debtor disclosed and discussed his interest in Ecolotech in his Rule 2004 examination conducted by the Plaintiff.

Plaintiff had ample opportunity to examine the Debtor regarding Ecolotech at the Section 341 meeting and its Rule 2004 examination.[53] The Debtor's interest in Ecolotech was no secret to Plaintiff. Plaintiff has known of the Debtor's interest in Ecolotech since 2002. It named Ecolotech as a defendant in its cross petition in the Iowa Litigation.

The Debtor did not attempt to conceal his interest in Ecolotech. His omission of Ecolotech in Schedule B was an unintentional oversight. The omission was not fraudulent.

### *Other Companies and Creditors*

Question 18 of the Statement of Financial Affairs requires disclosure of:

> the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of the case.

Plaintiff alleges the Debtor knowingly and fraudulently failed to disclose in his Schedules and Statement of Financial Affairs his involvement and interest in four entities.

---

[53] Plaintiff's Ex. Nos. 30, 31.

The Debtor was a manager of Wells Ventures, LLC in 2005, but had no ownership interest in the company.[54] He explained he did not list the company in Schedule B because he had no ownership interest in the company.[55] The Debtor was not required to disclose the company in Schedule B since he had no ownership interest in it.

The Debtor was required to list the company in Question 18 of his Statement of Financial Affairs. He explained he did not list it because he understood Question 18 to require disclosure of entities in which he held at least a five percent ownership interest.[56] The Debtor's explanation was credible. A *pro se* debtor inexperienced with bankruptcy matters could have difficulty in understanding Question 18.

Stargate Advisory Group ("Stargate") was a joint venture partner of Wells Ventures, LLC.[57] The Debtor was a director and the Vice President of Stargate in 2006.[58] The Debtor did not have an ownership interest in Stargate and was not required to list the company in Schedule B. He omitted to list Stargate in Question 18 of his Statement of Financial Affairs because he understood Question 18 to require disclosure of entities in which he held at least a five percent ownership interest.[59] His explanation was credible.

Plaintiff examined the Debtor regarding BMC Financial Group, LLC ("BMC"), but did not address this entity in its Complaint. A Nevada Secretary of State printout reflects BMC is a Nevada company whose address is the Debtor's home address and the Debtor is its Managing Member.[60] Its status was "revoked" as of December 6, 2002.[61]

---

[54] Plaintiff's Ex. No. 24; June 25, 2009 Hr'g Tr., pp. 95-96.
[55] June 25, 2009 Hr'g Tr., p. 96, ll.21-24.
[56] Id. at p. 98, ll. 1-4.
[57] Plaintiff's Ex. No. 27; June 25, 2009 Hr'g Tr., pp. 98-99.
[58] Plaintiff's Ex. No. 27; June 25, 2009 Hr'g Tr., pp. 98-99.
[59] June 25, 2009 Hr'g Tr., p. 98.
[60] Plaintiff's Ex. No. 29.
[61] Id.

The Debtor had no knowledge of this company and believed a broker of bank instruments named William B. Kwak had formed the entity.[62]  His testimony was credible.  The Debtor made no fraudulent omissions regarding BMC.

Plaintiff alleges the Debtor failed to disclose in his bankruptcy papers his status as director of Anser AG Anlage-Service.  It presented no evidence in support of this allegation.

Plaintiff alleges the Debtor failed to disclose "funds set aside for his benefit in Europe."  This allegation appears to relate to the Stargate/Wells joint venture.[63]  The joint venture or a related entity had approximately $10,000,000.00 on deposit with J.P. Morgan Chase Bank N.A. and/or HSBC Private Bank SA in Switzerland[64]  The funds consisted of investor funds and the Debtor, as a Director of Stargate, authorized the return of $500,000.00 to an unsatisfied investor on March 23, 2006.[65]  The Debtor had signatory authority on the HSBC bank account.[66]

The Debtor was involved in the joint venture for approximately four or five months and resigned.[67]  The HSBC account was closed upon his resignation.[68]  The Plaintiff did not establish the Debtor had any interest in any joint venture funds or funds in on deposit.  It did not establish there were funds set aside in Europe for the Debtor's benefit.

Plaintiff alleges the Debtor failed to disclose "his interest and status in a partnership that provided engineering services for projects in China known as the 'China

---

[62] June 25, 2009 Hr'g Tr., pp. 102-103.
[63] Plaintiff's Ex. No. 28.
[64] June 25, 2009 Hr'g Tr., p. 99.
[65] Id. at pp. 100-101; Plaintiff's Ex. No. 28.
[66] June 25, 2009, Hr'g Tr., p. 112.
[67] Id.
[68] Id.

19

Growth Fund.'" The Plaintiff did not establish the Debtor had any interest in such a partnership or a China Growth Fund.

Any omissions regarding Wells, Stargate, BMC, or the Stargate/Wells joint venture were the result of inadvertence or ignorance. Plaintiff did not establish the Debtor made any omissions with fraudulent intent or attempted to conceal assets.

Plaintiff alleges the Debtor failed to disclose the alleged creditors John Aranda, Ted Baker, Bill Brown, Sarah Brown, Lee Underwood, Southridge Properties, Inc., and "Mr. Berens." It asserts the Debtor knowingly and fraudulently omitted these alleged creditors.

The Debtor listed five creditors in his Schedules and matrix, including Plaintiff. The IRS and Plaintiff were the only creditors that filed claims. No other persons or entities have appeared in the bankruptcy case asserting claims against the Debtor. The Debtor testified Ecolotech has creditors, but he listed all of the creditors to whom he is personally liable.

Ecolotech is a separate and distinct entity from the Debtor. The Debtor was required to disclose in Schedule G Ecolotech's co-obligation for any of the Debtor's debts, but he was not required to disclose Ecolotech's individual debts, or its assets, in his bankruptcy papers.

### *Count IV*

The Plaintiff alleges in Count IV of its Complaint the Debtor is not entitled to a discharge pursuant to 11 U.C.S. Section 727(a)(5) on the basis he failed to explain satisfactorily the prepetition loss of assets of more than $6,000,000.00 listed in his Personal Financial Statement. The assets include: notes and accounts receivable of

$200,000.00; $472,000.00 in "other assets readily convertible to cash"; real estate of $1,480,000.00; mortgages and contracts of $535,000.00; securities of $3,200,000.00; and personal property of $51,000.00.

Plaintiff did not present the Personal Financial Statement as evidence. It did not examine the Debtor regarding the Count IV allegations. It did not identify any substantial, identifiable assets the Debtor allegedly once owned, which are now unavailable for distribution to the Debtor's creditors. Plaintiff has not met its initial burden pursuant to Section 727(a)(5). Judgment is due to be entered in favor of the Debtor and against Plaintiff on Count IV of the Complaint.

The Plaintiff has failed to establish the elements of 11 U.S.C. Section 727 (a)(3), 727(a)(4)(A), or 727(a)(5). The Debtor is entitled to a discharge.

### *Dischargeability Analysis*

Plaintiff has the burden to establish by a preponderance of the evidence the four elements of a Section 523(a)(2)(A) dischargeability objection: (i) the Debtor made a false representation with the intent to deceive Plaintiff; (ii) Plaintiff relief upon the representation; (iii) its reliance was justifiable; and (iv) it incurred damages as a direct result of the false representation.

Plaintiff presented Weepie as its sole company witness. Pundt was not present even though Weepie had spoken with Pundt the morning of the trial and Pundt knew about the trial.[69] Weepie did not explain Pundt's absence.

---

[69] June 25, 2009 Hr'g Tr., pp. 67-68.

Plaintiff has established the first and second nondischargeability elements.  The Debtor presented to Plaintiff a list of "Accomplishments."[70]  The word "accomplishment" means something that has been achieved or completed.  He represented to Plaintiff he had successfully obtained "multi billion dollar funding" for several projects.  He represented he has been involved in buy/sell programs and has successfully raised funding.[71]

The Debtor represented to Plaintiff he has purchased and sold bank instruments for a large profit and he had access to documentary credit of $500,000,000.00.[72]  He promised, if Plaintiff placed $250,000.00 with Ecolotech, he would "double" its money in seven to ten days.[73]  He promised Plaintiff he could obtain financing of $30,000,000.00 if Plaintiff transferred $250,000.00 and $175,000.00 to Ecolotech.

These statements were all misrepresentations.[74]  The Debtor admitted the statements were untrue.[75]  He is not an experienced financier and has no experience with buying and selling bank instruments.  He had no ability to "double" the Plaintiff's money or to obtain financing of $30,000,000.00.  He intended Plaintiff's funds would not be transferred to Ecolotech, but to Allied Boston.  The Debtor made these misrepresentations with the intent to deceive Plaintiff and to induce it to transfer $425,000.00 to the Allied Boston account.

---

[70] Plaintiff's Ex. No. 1.
[71] Plaintiff's Ex. No. 2.
[72] Id.
[73] Plaintiff's Ex. No. 2.
[74] June 25, 2009 Hr'g Tr., pp. 80-86, 88, 123, 154-163.
[75] Id. at pp. 154-163.

Debtor's witness David H. Davis explained "embellishment" of one's credentials is standard practice in the financial industry.[76]    The Debtor's representations in his correspondence to Plaintiff were not embellishments, but falsehoods.

### *Justifiable Reliance*

Plaintiff has not established the third nondischargeability element.   Any reliance Plaintiff placed on the Debtor's verbal and written representations was neither justifiable nor reasonable, particularly given Pundt's and Weepie's high level of business sophistication.    Pundt is experienced in business matters, is a lawyer, and has law enforcement experience.    Weepie spent twenty-five years in finance in large corporate companies and then became involved in privately owned companies.[77]    He has been the Treasurer of Plaintiff since 2002.

Plaintiff had no experience with buy/sell programs or instruments.   It conducted no due diligence regarding buy/sell programs or instruments.    It conducted no due diligence regarding the Debtor's representations and "accepted them as the truth."[78]    It made no investigation into the Debtor's experience, his background, or representations.[79]   It understood it was wiring funds to Allied Boston, but made no inquiries into Allied Boston or investigated why the Debtor was directing it to wire the funds to an Allied Boston account.[80]

---

[76] June 29, 2005 Hr'g Tr., pp. 175, 180-181.
[77] June 25, 2009 Hr'g Tr. p., 42.
[78] Id. at p. 51; p. 165.
[79] Debtor's Ex. No. 19.
[80] June 29, 2009 Hr'g Tr., pp. 51-53.

The Debtor's initial letter of May 28, 2002 reflects Ecolotech and the Debtor are not experienced financiers. It sets forth Ecolotech is an environmental clean-up company and the Debtor's primary experience is in construction and environmental matters. Only two entries on the Debtor's "Accomplishments" list pertain to securities or finance. An unsophisticated person should have recognized the Debtor did not have experience in finance and should have conducted due diligence.

Plaintiff was not justified in believing its initial investment of $250,000.00 would be doubled in seven to ten days. It was not justified in believing its investment of $425,000.00 could have been turned into financing of $30,000,000.00. Such a return on investment is implausible.

### *Damages*

Plaintiff does not contend the Judgment has preclusive effect as to fraud, but has preclusive effect as to damages. It asserts it has incurred damages in the amount of the Judgment as a result of the Debtor's fraudulent statements. Plaintiff has the burden to establish the Judgment has preclusive effect. The Judgment has preclusive effect if it constitutes a valid judgment against the Debtor pursuant to Iowa State Law. This Court has authority to determine whether the elements of collateral estoppel have been met, including whether the Debtor had a full and fair opportunity to litigate the issues decided by the Iowa State Court.

Given Plaintiff did not establish the third element of nondischargeability, the Judgment debt is nondischargeable and a determination of whether the Judgment is entitled to preclusive effect and establishes Plaintiff's damages need not be addressed.

24

Plaintiff has not established by a preponderance of the evidence each of the nondischargeability elements of 11 U.S.C. Section 523(a)(2)(A).  The indebtedness owed by the Debtor to the Plaintiff arising from the Judgment is dischargeable and due to be discharged.

## CONCLUSIONS OF LAW

The Court takes judicial notice of the docket contents of the Debtor's main case, the claims register, and this adversary proceeding pursuant to Federal Rule of Evidence 201(b).

### *Discharge Objection Standard of Proof*

The party objecting to the debtor's discharge has the burden of establishing the debtor is not entitled to receive a discharge.  FED. R. BANKR. P. 4005.  The standard of proof is preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Post, 347 B.R. 104, 111-112 (Bankr. M.D. Fla. 2006).  Objections to discharge are to be strictly construed against the objecting party and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).  "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural."  Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

### *11 U.S.C. Section 727(a)(3)*

Plaintiff did not pursue its 11 U.S.C. Section 727(a)(3) cause of action against the Debtor.  Judgment is due to be entered in favor of the Debtor and against the Plaintiff on Count III of the Complaint.

25

### 11 U.S.C. Section 727(a)(5)

The Plaintiff alleges in Count IV of its Complaint the Debtor is not entitled to a discharge pursuant to 11 U.C.S. Section 727(a)(5).    A discharge will be denied pursuant to Section 727(a)(5) where:

> the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).

Plaintiff referenced 11 U.S.C. Section 727(a)(5) in its opening statement at trial, but did not present any evidence relating to this cause of action.  Plaintiff, to sustain its initial evidentiary burden, had to establish the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors.  Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995); Murphy v. Rivertree Landing, LLC (In re Murphy), Case No. 6:08-cv-198-Orl-31, 2008 WL 2224835, at *5 (M.D. Fla. May 27, 2008).

Plaintiff did not establish the Debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors.  Judgment is due to be entered in favor of the Debtor and against the Plaintiff on Count IV of the Complaint.

### 11 U.S.C. Section 727(a)(4)(A)

Section 727(a)(4)(A) of the Bankruptcy Code provides the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  The party objecting to discharge in a Section 727(a)(4)(A) proceeding must establish the debtor

made the false oath knowingly and fraudulently.  Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984).

The Eleventh Circuit has held a discharge should be denied where the omission from the schedules or statement of financial affairs is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991).  The subject matter of a false oath is considered "material" and thus sufficient to bar discharge if it "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property."  In re Chalik, 748 F.2d at 618.  An asset's lack of value is immaterial to the disclosure requirement. Keefe v. Rudolph (In re Rudolph), 233 Fed. Appx. 885, 890 (11th Cir. 2007). Keefe, 233 Fed. Appx. at 890.

"Discharge may not be denied where the untruth was the result of mistake or inadvertence."  Id. at 890 (citation omitted).  "Rather, the false oath must be made intentionally with regard to a matter material to the case."  Id. (citation omitted).

The Debtor made significant omissions in Schedule B and his Statement of Financial Affairs.  His ownership interest in Ecolotech constitutes property of the estate pursuant to 11 U.S.C. Section 541(a)(1) and he was required to disclose that interest in Schedule B.  He failed to disclose his interest in Ecolotech in Schedule B.

He was required to disclose his interests in the three Kentucky probate proceedings in Schedule B and the distributions as income in Question 2 of his Statement of Financial Affairs.  The prepetition inheritance distributions do not constitute property of the estate.  11 U.S.C. § 541(a)(5).  Any inheritance distributions the Debtor received,

27

or was entitled to receive, within 180 days after the Petition Date constitute property of the estate and are subject to turnover to the Trustee. 11 U.S.C. §§ 541(a)(5), 542(a).

The Debtor did not disclose his interests in the three probate proceedings in Schedule B. He did not disclose the prepetition inheritance distributions in his Statement of Financial Affairs. He did not disclose his affiliations with Wells Ventures, Stargate, BMC, or the Stargate/Wells Joint Venture in Question 18 of his Statement of Financial Affairs.

He provided credible explanations for, or admitted a lack of knowledge of, these omissions. The omissions were the result of mistake and ignorance. He disclosed the existence of and his interest in Ecolotech in Schedule G, Schedule I, and his Statement of Financial Affairs. He disclosed Ecolotech and his inheritance interests to the Trustee early in the case and at his examinations.

The Debtor did not act fraudulently in omitting this information from his bankruptcy papers. He did not attempt to conceal any assets. Plaintiff did not establish the elements of 11 U.S.C. Section 727(a)(4)(A). Judgment is due to be entered in favor of the Debtor and against the Plaintiff on Count III of the Complaint. The Debtor is entitled to a discharge.

### 11 U.S.C. Section 523(a)(2)(A)

Plaintiff contends in Count I the Judgment debt is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A). Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a
> statement respecting the debtor's or an insider's financial
> condition.

11 U.S.C. § 523(a)(2)(A).

Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (i) the Debtor made a false representation to deceive the Plaintiff; (ii) Plaintiff relied on the misrepresentation; (iii) the reliance was justified; and (iv) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). It must establish each of the four elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995).

The reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. Whether such reliance is justified is determined by a subjective test. Id. at 281. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the

light of his individual case." Id. (*quoting* W. PAGE KEETON, PROSSER & KEETON ON

TORTS § 108, at 751 (5th ed. 1984)). The exercise of common sense is relevant:

> [i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

Id. at 283.

A plaintiff, as the final nondischargeability element, must establish a causal link

between the debtor's intentional misrepresentation and the resulting loss sustained by the

plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002).

Plaintiff established the Debtor made false representations with the intent to

deceive Plaintiff at the time the wire transfers were made. The Debtor grossly

misrepresented his experience and abilities. He misrepresented how the wired funds

would be used. He made the misrepresentations with the intent to deceive Plaintiff.

Plaintiff relied upon the Debtor's misrepresentations. Plaintiff established the first and

second nondischargeability elements of Section 523(a)(2)(A).

Plaintiff failed to establish the third nondischargeability element. The reliance

Plaintiff placed on the Debtor's falsehoods was not justified. Pundt, primarily, and

Weepie relied upon the Debtor's verbal statements and letters and transferred

$450,000.00 to Allied Boston. Whether their reliance was justified is determined by a

subjective test. In re Vann, 67 F.3d at 283-84. Their levels of sophistication, capacities,

and knowledge are relevant. Id.

Pundt and Weepie are sophisticated in business and financial matters. Pundt is

sophisticated in legal matters and has investigative experience. They each had the

capacity and ability to thoroughly investigate the Debtor, his statements, the proposed funding facility, and Allied Boston. They knew the funds were being wired to Allied Boston. They, given the nature of Plaintiff's business, had the technology resources to conduct extensive due diligence. Despite their capacities, abilities, and resources, Plaintiff conducted no due diligence.

A cursory read of the Debtor's May 28, 2002 letters reveals Ecolotech and the Debtor are experienced in environmental clean-up matters, but have little experience with securities, bank instruments, or venture capital. The letters should have triggered a thorough investigation. In re Vann, 67 F.3d at 283. The Debtor's promises he could turn a $450,000.00 investment into a $30,000,000.00 loan are so fantastic they should have served as a warning Plaintiff was being deceived. Id.

Plaintiff's reliance on the Debtor's representations was not justified. The indebtedness resulting from the Judgment is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727.

### Damages

Congress requires federal courts to give preclusive effect to state court judgments whenever the courts of the state rendering the judgments would do so. See, 28 U.S.C. § 1738; Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980). The party seeking to invoke the preclusive doctrines, has the burden to establish their elements. Piper Aircraft Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1296 (11th Cir. 2001).

The Judgment Order was issued against the Debtor by default and the Debtor may collaterally challenge it on jurisdictional grounds. Borg-Warner Acceptance Corp. v.

31

Lovett & Tharpe, Inc., 734 F.2d 639, 640 (11th Cir. 1984) (*citing* as binding precedent

Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 (5th Cir. 1974)). Such

a challenge may be determined by this Court.  Rash v. Rash, 173 F.3d 1376, 1381 (11th

Cir. 1999) (*holding* "A defendant may defeat subsequent enforcement of a default

judgment in another forum by demonstrating that the judgment issued from a court

lacking personal jurisdiction even if the court entering the default determined that it had

personal jurisdiction over the defendant.").

   The Judgment cannot be enforced against the Debtor if the Iowa State Court did

not have *in personam* jurisdiction over the Debtor when it entered the Judgment.  Lawler

v. Kulik (In re Kulik), No. 6:07-cv-164-Orl-22, 2007 WL 6334815, at *9 (M.D. Fla. Aug.

27, 2007).  There is no need to address whether the Judgment constitutes a valid final

judgment given the Plaintiff did not establish the third nondischargeability element of

justifiable reliance and the Judgment debt is nondischargeable.

   A separate Judgment consistent with these Findings of Fact and Conclusions of

Law shall be entered contemporaneously.

Dated this 25th day of September, 2009.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge